UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JASON S. THORNE,

     Petitioner,

         v.                           Civil No. 14-cv-1300-JPG

UNITED STATES OF AMERICA,           Criminal No 12-cr-40080-JPG

     Respondent.

## MEMORANDUM AND ORDER

This matter comes before the Court on petitioner Jason S. Thorne's amended motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. 4).   On November 19, 2012, the petitioner pled guilty to conspiring to manufacture and distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 846.   The Court sentenced the petitioner to serve 156 months in prison.   The petitioner appealed his conviction to the United States Court of Appeals for the Seventh Circuit.   The Court of Appeals dismissed the appeal on May 30, 2013, pursuant to the petitioner's request.   The petitioner did not seek a writ of *certiorari* from the United States Supreme Court.

The petitioner timely filed an original § 2255 motion in his criminal case on February 3, 2014. The motion was ultimately transferred to the civil docket as a § 2255 proceeding and amended.   In his amended § 2255 motion, the petitioner raises the following claims:

- Ground 1:   His counsel provided ineffective assistance in violation of the Sixth Amendment for his advice about Thorne's potential sentence, his failure to file a motion for discovery, his failure to accept collect calls, his failure to investigate potential witnesses' criminal history, and his dismissal of Thorne's concerns as a need for "intense hand-holding";

- Ground 2:   The petitioner could not have been guilty due to an alibi for December 31, 2011 – incarceration in the Illinois Department of Corrections;

- Ground 3:   His counsel provided ineffective assistance in violation of the Sixth Amendment for advising him to plead guilty where there was insufficient truthful evidence of Thorne's conspiring with Robert Shreve; and

- Ground 4:   The Court erred in finding the petitioner to be a career offender because a prior felony conviction should have been a misdemeanor.

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts, the Court has determined that it is plain from the motion and the record of the prior proceedings that the petitioner is not entitled to relief on any ground.

## I.      § 2255 Standard

The Court must grant a § 2255 motion when a defendant's "sentence was imposed in violation of the Constitution or laws of the United States."   28 U.S.C. § 2255.   However, "[r]elief under § 2255 is available 'only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice.'"   *United States v. Coleman*, 763 F.3d 706, 708 (7th Cir. 2014) (quoting *Blake v. United States,* 723 F.3d 870, 878-79 (7th Cir. 2013), *cert. denied*, 134 S. Ct. 2830 (2014)), *cert. denied*, No. 14-8459, 2015 U.S. LEXIS 2050 (U.S. Mar. 23, 2015).   It is proper to deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively demonstrate that the prisoner is entitled to no relief."   28 U.S.C. § 2255(b); *see Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir. 2009). No hearing is necessary in this case because the record clearly demonstrates Thorne is entitled to no relief.

## III.     Analysis

### A.     Ground 1:   Ineffective Assistance of Counsel I

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."   U.S. Const. amend. VI.   This right to assistance of counsel encompasses the right to *effective* assistance of counsel.   *McMann v. Richardson*, 397 U.S. 759, 771, n. 14 (1970); *Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009).   A party claiming

2

ineffective assistance of counsel bears the burden of showing (1) that his counsel's performance fell below objective standards for reasonably effective representation and (2) that this deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 688-94 (1984); *United States v. Jones*, 635 F.3d 909, 915 (7th Cir. 2011); *Wyatt v. United States*, 574 F.3d 455, 457 (7th Cir. 2009); *Fountain v. United States*, 211 F.3d 429, 434 (7th Cir. 2000).

To satisfy the first prong of the *Strickland* test, the petitioner must direct the Court to specific acts or omissions of his counsel. *Wyatt*, 574 F.3d at 458. The Court must then consider whether, in light of all of the circumstances, counsel's performance was outside the wide range of professionally competent assistance. *Id.* The Court's review of counsel's performance must be "highly deferential[,] . . . indulg[ing] a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689; *accord Wyatt*, 574 F.3d at 458. Counsel's performance must be evaluated keeping in mind that an attorney's trial strategies are a matter of professional judgment and often turn on facts not contained in the trial record. *Strickland*, 466 U.S. at 689. The Court cannot become a "Monday morning quarterback." *Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990).

To satisfy the second prong of the *Strickland* test, the plaintiff must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different, such that the proceedings were fundamentally unfair or unreliable. *Jones*, 635 F.3d at 915; *Fountain*, 211 F.3d at 434; *Adams v. Bertrand*, 453 F.3d 428, 435 (7th Cir. 2006). "A reasonable probability is defined as one that is sufficient to undermine confidence in an outcome." *Adams*, 453 F.3d at 435 (citing *Strickland*, 466 U.S. at 694).

In a case where a petitioner pled guilty as a result of alleged ineffective assistance of counsel, to satisfy the first prong of the *Strickland* test, the petitioner must show that his counsel's advice leading to

3

the plea was outside the range of professionally competent assistance.   *Hill v. Lockhart*, 474 U.S. 52, 56-57 (1985) (citing *McMann v. Richardson*, 397 U.S. 759, 771 (1970); *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)).   To satisfy the second *Strickland* prong, he must show that there is a reasonable probability that, but for his counsel's deficient performance, he would not have entered a guilty plea and instead would have gone to trial.   *Hill*, 474 U.S. at 58; *United States v. Parker*, 609 F.3d 891, 894 (7th Cir. 2010); *Wyatt*, 574 F.3d at 458; *Richardson v. United States*, 379 F.3d 485, 487 (7th Cir. 2004). Counsel's deficient performance must have been a decisive factor in the defendant's decision to enter a guilty plea.   *Wyatt*, 574 F.3d at 458; *see Julian v. Bartley*, 495 F.3d 487, 498 (7th Cir. 2007).   To make such a showing, the petitioner must present objective evidence that he would not have entered a guilty plea; his own self-serving testimony that he would have insisted on going to trial is not enough.   *Koons v. United States*, 639 F.3d 348, 351 (7th Cir. 2011); *McCleese v. United States*, 75 F.3d 1174, 1179 (7th Cir. 1996) (citing *Toro v. Fairman*, 940 F.2d 1065, 1068 (7th Cir. 1991)); *see Wyatt*, 574 F.3d at 458 (stating "a defendant's mere allegation that he would have chosen a path other than the conditional plea is insufficient by itself to establish prejudice").

Thorne argues his counsel was constitutionally ineffective in several ways; the Court addresses each in turn.

### 1.   Sentence Estimate

Thorne suggests there was something deficient about his counsel's estimate of his sentence.   He claims his counsel originally told him his sentence would be no more than 60 months, but then approached him about a plea agreement that contemplated a guideline sentencing range of 151 to 188 months.   He says his counsel told him it was the best offer he could get, to think of his family, and that if he refused he could face 20 years in prison.   Thorne said he was scared, so he accepted the plea agreement and pled guilty.

4

Thorne's counsel was not deficient in his advice about the potential sentence.   Although his original estimate of 60 months was off base, his later advice concerning a potential plea was spot on. The stipulation of facts accompanying the plea agreement provided that Thorne was involved with Robert Shreve and others in the manufacture, distribution and use of methamphetamine, including cooking methamphetamine with Shreve.   The stipulation also provided that Thorne's relevant conduct was 10.2 gram of methamphetamine and 45.6 grams of pseudoephedrine.   Thorne signed the stipulation of facts after reading it and going over it with his attorney.   He also admitted in his plea colloquy that the factual basis reflected in the stipulation was true.   As for the plea agreement itself, it contemplated that Thorne's relevant conduct would result in a total offense level of 25 and that, in combination with Thorne's criminal history category of VI, it would yield a guideline sentencing range of 110 to 137 months.   The plea agreement also allowed for the possibility that Thorne could be a career offender due to prior convictions possibly for crimes of violence.   If he were to be a career offender, the plea agreement contemplated a total offense level of 29 and criminal history category of VI, which would yield a guideline sentencing range of 151 to 181 months.   Thorne signed the plea agreement after reading it and going over it with his attorney.   Indeed the basis for the estimates in the stipulation and plea agreement was borne out in the Presentence Investigation Report later prepared for sentencing.

There was nothing wrong with counsel's assessment that the plea deal was advantageous to Thorne, and that Thorne could face 20 years in prison if he did not plead guilty.   The guideline sentencing ranges set forth above depended on a 3-point offense level reduction for acceptance of responsibility under U.S.S.G § 3E1.1, a reduction generally only available with a timely guilty plea. Without the plea, Thorne would likely miss out on that reduction, and his offense level would have been 3 points higher.   If the Court had found him to be found a career offender, which it ultimately did, his offense level would have been 32, and his sentencing range would have been 210 to 240 months (capped

5

at the top end by a 20-year statutory maximum).   Counsel's assessment that Thorne could face 20 years was, indeed, accurate, and his assessment that a deal for a lower sentence was the best deal Thorne could get was reasonable.   Counsel was not constitutionally deficient in his assessment that the plea agreement was the best offer Thorne could reasonably expect.

### 2.   Motion for Discovery/Failure to Investigate

Thorne faults his counsel for failing to file a motion for discovery or to investigate the criminal histories of witnesses against him.   As to the motion for discovery, such motions are not necessary in this district because the United States Attorney's Office has an "open file" policy that allows defense counsel to inspect the Government's evidence.   Unless there is an indication the Government is not complying with that policy, a motion for discovery is not needed, and counsel was not deficient for failing to file one.

Furthermore, where a defendant faults his counsel for failing to investigate or unearth evidence, he bears the burden of showing what specific evidence counsel should have found and how it would have had a reasonable probability of changing the outcome of the case.   *Hardamon v. United States*, 319 F.3d 943, 951 (7th Cir. 2003) (internal quotations and citation omitted); *accord Richardson v. United States*, 379 F.3d 485, 488 (7th Cir. 2004).   He cannot rely on vague allegations that the investigation was insufficient or would have yielded favorable evidence.   *See Hardamon*, 319 F.3d at 951.   Here, Thorne has not specified what his counsel would have found if he had filed a motion for discovery or had he conducted further investigation of potential witnesses' criminal histories.   Nor has he provided objective evidence of how that information would have had a reasonable probability of causing him to change his decision to plead guilty.

### 3.   Failure to Accept Collect Calls and Address Concerns

Finally, it is clear that Thorne was not happy with the level of personal attention his counsel paid

6

him while his case was pending.   He did not accept Thorne's collect calls and failed to give him the individualized attention Thorne wanted, calling it "intensive hand-holding."   The Court is puzzled by these accusations after Thorne stated under oath at his plea colloquy that he was satisfied with the counsel, representation and advice given by his attorney.   He also stated under oath that he understood the charges against him, the possible penalties he faced, his rights as a criminal defendant, and the essential terms of his plea agreement.   He further stated under oath that he had discussed with his counsel the indictment, the terms of the plea agreement and stipulation of facts, and the sentencing guidelines and how they might apply in his case.   Thorne has not suggested, much less shown, how spending more time talking to counsel would have had a reasonable probability of changing the result of the case.   Thus, he has failed to show prejudice from any lack of attention from his counsel.

B.      Ground 2:   Alibi Defense

Thorne argues that it was impossible for him to have participated in a crime on December 31, 2011, because he was an inmate in the Illinois Department of Corrections at the time.   The Court is puzzled by this argument because nowhere in the indictment, the plea colloquy or sentencing is the date of December 31, 2011, mentioned.   Furthermore, the indictment charges the conspiracy happened "[f]rom in or about 2009, through in or about 2011," and did not specifically cite December 31, 2011. Thus, whatever Thorne happened to be on December 31, 2011, does not appear to be relevant to this offense.   This is neither here nor there, however, because Thorne's alibi argument is not cognizable in a § 2255 motion.   An alibi defense is not a constitutional argument, and a defendant cannot raise in a § 2255 motion nonconstitutional issues that he failed to raise on direct appeal.   *Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir. 2009); *Lanier v. United States*, 220 F.3d 833, 842 (7th Cir. 2000).

C.      Ground 3:   Evidence to Support Conviction

Thorne faults his counsel for advising him to plead guilty where there was insufficient truthful

evidence of Thorne's conspiring with Robert Shreve.   Specifically, he suggests Shreve's statement to law enforcement that he cooked methamphetamine with Thorne was a lie, and that the Government possessed no corroborating evidence such as recorded buys, pictures or methamphetamine.   He says he was scared, so he pled guilty to a conspiracy he knew nothing about.

Thorne's counsel was not deficient.   Shreve gave a proffer statement to law enforcement agents that he and Thorne cooked 10.2 grams of methamphetamine over the course of four cooks.   Even without corroboration, this was sufficient evidence for the Court to find Thorne was involved in those cooks.   It is true that Thorne's counsel could have tried to argue at sentencing that Shreve's statement was unreliable and therefore should not be used to establish relevant conduct.   *See United States v. Wilson*, 502 F.3d 718, 722 (7th Cir. 2007) (evidence of relevant conduct "must bear sufficient indicia of reliability"); *United States v. Acosta*, 85 F.3d 275, 282 (7th Cir. 1996) (same).   However, Thorne has not specified what ammunition his counsel could have used in this attack.   It was clear that Shreve was a convicted felon and could potentially have benefited from giving a proffer statement implicating another person, but statements from such witnesses are par for the course in most federal sentencings for conspiracy crimes.   Harping on those points alone was unlikely to have caused the Court to find Shreve's statement unreliable.   This is especially true since in his statement, Shreve did not seek to shift blame from himself to Thorne but tended to inculpate them both, which supports his reliability.   In the absence of anything more concrete Thorne's counsel could have used to discredit Shreve's statements, Thorne cannot establish that counsel was deficient.   Furthermore, Thorne admitted under oath at his plea colloquy that he cooked methamphetamine with Shreve and that his relevant conduct included 10.2 grams of methamphetamine.   Counsel would be hard-pressed to argue against a proposition his own client admitted under oath earlier in the case.   The bottom line is that Thorne's counsel was not deficient for advising him to plead guilty to what was, as explained above, a favorable plea agreement under the

8

circumstances

Thorne's other concerns with sentencing mentioned in Ground 3 are covered by the Court's discussion of Ground 1.

D.    Ground 4:   Error in Career Offender Finding

Thorne objects to his classification as a career offender.   This argument is not cognizable in a § 2255 motion.   *United States v. Coleman*, 763 F.3d 706, 708-09 (7th Cir. 2014), *cert. denied*, No. 14-8459, 2015 U.S. LEXIS 2050 (U.S. Mar. 23, 2015); *Hawkins v. United States*, 706 F.3d 820, 823 (7th Cir.), *supp'd by* 724 F.3d 915 (7th Cir. 2013), *cert. denied*, 134 S. Ct. 1280 (2014).   *Coleman* and *Hawkins* hold that, if a defendant's sentence is within the statutory range, which Thorne's was, an erroneous career offender finding is not cognizable in a § 2255 proceeding.   This is because, in light of the Court's discretion to give an appropriate sentence regardless of the advisory guideline range, an erroneous career offender finding does not work a miscarriage of justice for § 2255 purposes.   Thus, Thorne's challenge to his career offender status and the calculation of his guideline range based on that status is not cognizable here.

Having considered Thorne's motion and the record of the prior proceeding and having found Thorne is not entitled to § 2255 relief, the Court dismisses this case pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts.

## IV.    Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings and Rule 22(b)(1) of the Federal Rules of Appellate Procedure, the Court considers whether to issue a certificate of appealability of this final order adverse to the petitioner.   A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2); *see Tennard v. Dretke*, 542 U.S. 274, 282 (2004); *Ouska v. Cahill-Masching*, 246 F.3d 1036,

1045 (7th Cir. 2001). To make such a showing, the petitioner must "demonstrate that reasonable jurists could debate whether [the] challenge in [the] habeas petition should have been resolved in a different manner or that the issue presented was adequate to deserve encouragement to proceed further." *Ouska*, 246 F.3d at 1046; *accord Tennard*, 542 U.S. at 282; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (certificate of appealability should issue if the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."). The Court finds that Thorne has not made such a showing and, accordingly, declines to issue a certificate of appealability.

## V.     Conclusion

For the foregoing reasons, the Court **DISMISSES** Thorne's amended § 2255 motion (Doc. 4), **DIRECTS** the Clerk of Court to enter judgment accordingly and **DECLINES** to issue a certificate of appealability. In light of this ruling, Thorne's motions for appointment of counsel (Docs. 3 & 7) are **DENIED as moot**.

**IT IS SO ORDERED.**
**DATED:   March 31, 2015**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**

10